# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **JOHN J. BOLLING,**<br>    Plaintiff<br><br>v.<br><br>**MARTIN J. O'MALLEY**[1]**,**<br>**Commissioner of Social Security,**<br>    Defendant | Civil Action No. 2:22cv00027<br><br>**REPORT AND**<br>**RECOMMENDATION**<br><br>By:  PAMELA MEADE SARGENT<br>       United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, John J. Bolling, ("Bolling"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 423 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). Neither party has requested oral argument. This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*,

---

[1] Martin J. O'Malley, ("O'Malley"), became the Commissioner of Social Security on December 20, 2023.  Pursuant to Federal Rules of Civil Procedure Rule 25(d), O'Malley should, therefore, be substituted for Kilolo Kijakazi as the defendant in this case.  Pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action is required to continue this suit.

-1-

829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Bolling protectively filed his application for DIB on March 11, 2021, alleging disability as of December 11, 2020, based on right thumb amputation; anxiety; depression; hypertension; knee and back problems; left shoulder pain; shortness of breath; and learning problems. (Record, ("R."), at 12, 171-72, 209, 244.) The claim was denied initially and upon reconsideration. (R. at 79-98.) Bolling then requested a hearing before an administrative law judge, ("ALJ"). (R. at 99-100.) The ALJ held a hearing on April 8, 2022, at which Bolling was represented by counsel. (R. at 33-56.)

By decision dated April 19, 2022, the ALJ denied Bolling's claim. (R. at 12-26.) The ALJ found that Bolling meets the nondisability insured status requirements of the Act for DIB purposes through December 31, 2025. (R. at 14.) The ALJ found that Bolling had not engaged in substantial gainful activity since December 11, 2020,[2] the alleged onset date. (R. at 15.) The ALJ found that the medical evidence established that Bolling had severe impairments, namely right thumb amputation; obesity; hypertension; depression; and anxiety, but he found

---

[2] Bolling must show that he became disabled between December 11, 2020, his alleged disability onset date, and April 19, 2022, the date of the ALJ's decision, to be eligible for benefits.

that Bolling did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15.) The ALJ found that Bolling had the residual functional capacity to perform light[3] work, except he could have no exposure to unprotected heights; he could occasionally kneel and crawl; he could occasionally handle, finger and feel with the right hand, but could have no opposable thumb requirements using the right hand; he could have occasional exposure to pulmonary irritants; and he could not perform production rate or pace work, defined as having to keep up with an assembly line or in a job with strict daily or hourly quotas. (R. at 18.) The ALJ found that Bolling was unable to perform his past relevant work. (R. at 24.) Based on Bolling's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Bolling could perform, including jobs as a sandwich board carrier, an usher and a furniture rental consultant.[4] (R. at 24-25, 51-52.) Thus, the ALJ concluded that Bolling was not under a disability as defined by the Act and was not eligible for DIB benefits. (R. at 25.) *See* 20 C.F.R. § 404.1520(g) (2022).

After the ALJ issued his decision, Bolling pursued his administrative appeals, (R. at 271-73), but the Appeals Council denied his request for review. (R. at 1-6.) Bolling then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2022).

[4] The hypothetical posed to the vocational expert also included that the individual would be limited to simple tasks, instructions and tasks that could be learned in 30 days or less. (R. at 52.)

404.981 (2022). This case is before this court on Bolling's motion for summary judgment filed May 1, 2023, and the Commissioner's motion for summary judgment filed May 31, 2023.

## II. Facts

Bolling was born in 1968, (R. at 24, 171), which, on the date of the ALJ's decision, classified him as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d). Bolling has a high school education and past relevant work as a roof bolter, a shuttle car operator and a scraper, loader operator. (R. at 24, 40-41, 51.) Bolling testified at his hearing that he took only Tylenol and Advil for pain. (R. at 41.) He stated he experienced "brain fog," which made it difficult for him to make decisions and to "think straight." (R. at 45.) Bolling stated his brain fog was a side effect of his medication. (R. at 45.) He stated he had difficulty staying focused. (R. at 45.) Bolling stated he experienced anxiety or panic attacks two to three times a week. (R. at 46.) Bolling stated he had numbness and tingling in his right upper extremity and constant pain in his right rotator cuff. (R. at 47.) He stated he had numbness and constant pain in his left shoulder. (R. at 48.) Bolling stated he needed assistance with buttoning his pants and putting his socks and shoes on, as he was unable to do these tasks with his left hand alone. (R. at 49.) He stated that, despite being prescribed three medications for hypertension, he continued to have issues with high blood pressure. (R. at 49.)

In rendering his decision, the ALJ reviewed medical records from Jo McClain, Psy.D., a state agency psychologist; Dr. Jack Hutcheson, Jr., M.D., a state agency physician; Leslie Montgomery, Ph.D., a state agency psychologist; Dr. Robert McGuffin, Jr., M.D., a state agency physician; Wellmont Medical

Associates; UK HealthCare; Pikeville Medical Center; Commonwealth Hand & Physical Therapy – Berea; and Dickenson County Behavioral Health Services.

In 2016, Bolling suffered a work-related injury and trauma to his right hand. (R. at 292-95.) X-rays of Bolling's right hand showed no fractures. (R. at 291.) Bolling was diagnosed with a crush to the right hand with lacerations. (R. at 292.) In 2017, Bolling complained of lower back and abdominal pain after being involved in a motor vehicle accident. (R. at 484, 487.) A March 31, 2017, CT scan of Bolling's lumbar spine was unremarkable. (R. at 287.) Bolling was diagnosed with lumbar strain and periumbilical abdominal pain. (R. at 486, 489.) In May 2017, Bolling was diagnosed with pancreas disorder[5] and anxiety. (R. at 494.) From 2017 through 2019, Bolling's examination findings routinely showed his neck had normal range of motion; his abdomen exhibited no distension, mass or tenderness; his musculoskeletal system exhibited normal range of motion with no tenderness, deformity or edema; he displayed normal reflexes; he was fully oriented; and his mood and affect were normal. (R. at 493-94, 496, 499, 502, 506, 509, 512-13, 517.) Bolling reported his "nerves" were "doing well" on Wellbutrin, his hypertension improved with his treatment regimen and his eczema was well controlled. (R. at 504, 507.)

From March 2020 through January 2022, Bolling was seen by Dr. Ronald D. Sheppard, D.O., and Dr. Samuel P. Deel, D.O., physicians with Wellmont Medical Associates, for hypertension; eczema; gait problems; joint swelling; anxiety; depression; and shortness of breath. (R. at 300-02, 304, 523, 851, 854, 856, 859, 861.) During this time, Bolling's examination showed he was fully oriented; his

---

[5] Subsequent CT scans showed Bolling's pancreatic nodule was stable. (R. at 498, 501, 504, 766.)

neck and musculoskeletal system had normal range of motion; his radial and pedal pulses were 2+, bilaterally; his sensory and motor function were grossly intact; he had no focal deficits; he exhibited no tenderness, deformity or edema; he had normal reflexes; and his mood, affect and judgment were normal. (R. at 301-02, 304-05, 525, 853, 858.) Bolling reported his hypertension, eczema, anxiety and depression were controlled with medication. (R. at 300, 303, 523, 856.) In March and September 2021 and January 2022, Bolling denied abdominal pain, arthralgias and back pain. (R. at 524, 852, 858.)

On December 11, 2020, Bolling presented to the emergency department at Pikeville Medical Center following a work-related injury to his right thumb.[6] (R. at 405-14.) Bolling reported he had no feeling in his thumb and he was unable to move it. (R. at 334.) X-rays of Bolling's right thumb showed a displaced fracture arising from the base of the first proximal phalanx, soft tissue swelling and subcutaneous air. (R. at 455.) Bolling underwent a right thumb amputation and right thumb adjacent tissue rearrangement. (R. at 322-24.)

On December 29, 2020, Bolling saw Dr. Anil Duggal, M.D., a physician with Pikeville Medical Center, for postoperative care, and he participated in physical therapy from March 2021 through August 2021. (R. at 321, 360, 528-51, 592-662.) On December 29, 2020, Bolling reported decreased mobility, joint tenderness, numbness, swelling and tingling in the arms. (R. at 360.) Bolling had normal strength and range of motion of the right hand with no swelling, deformity/contracture or tenderness; his left hand had mild swelling but was nontender and had normal range of motion and strength. (R. at 363-64.) On

---

[6] Bolling was working in the coal mines when a large boulder hit his right thumb. (R. at 334.)

January 12, 2021, Bolling described his right-hand pain as mild, intermittent, and worsening. (R. at 367.) He stated his pain was aggravated by lifting, movement and cold weather. (R. at 367.) Examination of Bolling's right hand was normal and his upper extremity neurovascular examination was normal. (R. at 370-71.) Bolling was scheduled for debridement of the amputation area with possible skin graft. (R. at 371.) That same day, chest x-rays showed no evidence of cardiopulmonary abnormality, and an EKG was normal. (R. at 366, 415-17.)

On January 14, 2021, Bolling underwent debridement of his right thumb amputation. (R. at 424-45.) At his follow-up visits in January and February 2021, Bolling rated his pain level at four and two on a scale of one to 10. (R. at 373, 377, 383.) Examination of Bolling's right hand was normal and his upper extremity neurovascular examination was normal. (R. at 380, 384-85, 390.) He stated his overall wellbeing was good, and he had no further complaints. (R. at 385.) On February 26, 2021, Bolling denied pain and stated he was not using pain medication. (R. at 387.) He stated his activity level was back to pre-operative level. (R. at 387.)

On March 15, 2021, a chest x-ray showed that Bolling had mild nodular interstitial changes in the upper and mid lung zones. (R. at 348.) On March 19, 2021, Dr. Kathleen A. DePonte, M.D., a board-certified radiologist, opined that Bolling's March 15, 2021, chest x-ray showed parenchymal abnormalities consistent with pneumoconiosis. (R. at 349.) Dr. DePonte read a January 31, 2022, chest x-ray similarly on February 17, 2022. (R. at 861.)

On March 26, 2021, Bolling rated his pain level at eight on a scale of one to 10. (R. at 392.) Dr. Duggal observed swelling of Bolling's right hand. (R. at 392.)

Bolling stated his activity level was back to pre-operative level. (R. at 392.) Dr. Duggal noted that Bolling's heart rate and blood pressure were alarmingly high and Bolling complained of anxiety. (R. at 392.) Bolling was advised to be seen in the emergency department after his office visit. (R. at 392.) Dr. Duggal diagnosed early signs of Reflex Sympathetic Dystrophy Syndrome and he was referred to physical therapy for desensitization and increased range of motion of his hand. (R. at 395.) The remainder of Bolling's examination findings remained unchanged. (R. at 395.) That same day, Bolling presented to the emergency department at Pikeville Medical Center for high blood pressure. (R. at 446-54.) Bolling's extremities had good pulses with no point tenderness or edema and his neurological examination was intact. (R. at 452-53.) An EKG showed sinus tachycardia; probable left atrial enlargement; and probable anteroseptal infarction, old. (R. at 447.)

On May 3, 2021, Bolling saw Dr. Duggal, reporting moderate right-hand pain with decreased mobility. (R. at 552.) He rated his pain level at three on a scale of one to 10. (R. at 554.) The remainder of Bolling's examination findings remained unchanged. (R. at 555.) From June through November 2021, Bolling continued to see Dr. Duggal, reporting his right-hand pain occurred intermittently and was improving. (R. at 883, 888, 893, 899, 904, 909, 916.) Throughout this time, examinations of Bolling's right hand were normal, as well as examinations of his upper extremity neurovascular systems. (R. at 886, 890-91, 896, 901-02, 912, 919.) Dr. Duggal continued to keep Bolling out of work.[7] (R. at 881-82, 907-08.)

---

[7] In June 2021, Dr. Duggal stated that Bolling could return to work on June 30, 2021, and later found he could return to work on July 28, 2021. (R. at 914, 921.) In July 2021, Dr. Duggal stated that Bolling could return to work on August 14, 2021. (R. at 915.) Dr. Duggal subsequently found on August 13, 2021 that Bolling could not return to work at the present time due to Bolling's upcoming pre-operative visit, (R. at 907), and later extended Bolling's work restriction to after his scheduled surgery on October 21, 2021. (R. at 908)

From June 2021 through March 2022, Bolling participated in individual therapy at Dickenson County Behavioral Health[8] for anxiety, depression and to develop strategies to cope with his disability. (R. at 669-82, 815-42, 865-73) He was diagnosed with panic disorder, episodic paroxysmal anxiety[9] and insomnia, unspecified. (R. at 675-76.) During this time, Bolling reported his depression improved with medication. (R. at 675, 819, 867, 869.) Bolling's mood was normal, and, at times, depressed; he denied suicidal and homicidal ideations; he exhibited no difficulties with impulse control, self-destruction or self-care; and his memory, insight, judgment, concentration, speech, affect, thought content and thought process were normal. (R. at 669, 673, 676-77, 680, 815, 817, 820, 823, 825, 828, 839-40, 867, 871.)

On June 21, 2021, Jo McClain, Psy.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Bolling's anxiety and obsessive-compulsive disorders were not severe. (R. at 60.) McClain opined Bolling had mild limitations on his ability to understand, remember or apply information, to interact with others and to concentrate, persist or maintain pace and no limitations on his ability to adapt or manage himself. (R. at 60.) She noted Bolling had been diagnosed with anxiety, was prescribed Wellbutrin, had normal mental status examinations and most of his limitations were due to his right thumb amputation. (R. at 61.) On September 30, 2021, Leslie Montgomery, Ph.D.,

---

[8] Bolling was seen by Brian R. O'Quinn, L.M.H.P.-C., James Counts, Q.M.H.P., and Dr. Starla Kiser, M.D.

[9] On November 15, 2021, Bolling reported he continued to have "anxiety spells" in the mornings. (R. at 823.) On March 10, 2022, Bolling reported irritability and continued anxiety, but stated his depressive symptoms improved with medication. (R. at 867, 869.)

a state agency psychologist, completed a PRTF which mirrored that of McClain. (R. at 68-69.)

On June 21, 2021, Dr. Jack Hutcheson, Jr., M.D., a state agency physician, completed a medical assessment, finding Bolling could occasionally and frequently lift and carry items weighing 25 pounds; push and pull as much as the lift and carry restrictions; stand and/or walk and sit six hours each in an eight-hour workday; frequently climb ladders, ropes or scaffolds; balance, stoop, kneel, crouch and crawl; occasionally finger using the right hand due to right thumb amputation; and frequently handle. (R. at 62-63.) No visual, communicative or environmental limitations were noted. (R. at 63.) Dr. Hutcheson based his findings on Bolling's history of right thumb amputation and hypertension; he had no complaints of shoulder or back pain on examination; he had normal range of motion of his back and arms; and he was undergoing physical therapy for his amputation injury. (R. at 63.) He noted that 12 months from the date of his amputation injury, Bolling should be able to perform medium[10] tasks. (R. at 63.) On October 13, 2021, Dr. Robert McGuffin, Jr., M.D., a state agency physician, completed a medical assessment which mirrored that of Dr. Hutcheson. (R. at 70-71.)

On December 10, 2021, Bolling saw Dr. Duggal, reporting his right-hand pain had improved but he experienced pain with movement. (R. at 875.) Examination of Bolling's right hand was normal and his upper extremity neurovascular examination was normal. (R. at 878-79, 905-06.) Dr. Duggal stated Bolling "may not return to work at this time." (R. at 874.)

---

[10] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2022).

On January 4, 2022, Bolling saw Dr. Deel, reporting his medication improved his depression and his hypertension was controlled. (R. at 856.) Bolling denied abdominal pain, arthralgias and back pain. (R. at 858.) His examination findings remained unchanged. (R. at 858.) Dr. Deel diagnosed coal worker's pneumoconiosis and shortness of breath on exertion. (R. at 859.) On January 31, 2022, a pulmonary function test showed Bolling's forced vital capacity, ("FVC"),[11] was at 91 percent; and his forced expiration volume one second, ("$FEV_1$"),[12] was at 89 percent. (R. at 863.) Bolling's effort was described as good. (R. at 863.)

On February 15, 2022, Bolling saw Dr. Duggal, reporting his right-hand pain occurred intermittently and was improving. (R. at 926.) He described his pain level as "mild." (R. at 926.) Examination of Bolling's right hand was normal and his upper extremity neurovascular examination was normal. (R. at 929.) On March 4, 2022, Bolling underwent a bone osteotomy external fixator placement of the right thumb metacarpal. (R. at 936-82.) At his follow-up visits, Bolling reported improvement. (R. at 988, 992, 997.)

On March 25, 2022, Dr. Deel completed a medical assessment, finding Bolling could occasionally and frequently lift and carry items weighing less than five pounds; he had no limitation on his ability to sit, stand and/or walk; he could frequently stoop, kneel, balance, crouch and crawl and never climb; his ability to

---

[11] FVC refers to forced vital capacity, or the total volume of air a patient is able to exhale for the total duration of the test during maximal effort. *See* aafp.org/afp/2014/0301/p359.html (last visited Oct. 19, 2023).

[12] $FEV_1$ refers to forced expiratory volume in one second, or the total volume of air a patient can exhale in the first second during maximal effort. *See* aafp.org/afp/2014/0301/p359.html (last visited Oct. 19, 2023).

Pageid#: 1085

reach, to handle, to feel and to push/pull was limited; and he was restricted from working around heights, moving machinery and vibration. (R. at 1005-07.) Dr. Deel based his findings on Bolling's right thumb amputation. (R. at 1005-07.) He found that Bolling would be absent from work more than two days a month. (R. at 1007.)

On March 28, 2022, Dr. Duggal completed a medical assessment, finding Bolling could occasionally lift and carry items weighing up to eight pounds and three pounds frequently; he had no limitation on his ability to sit, stand and/or walk; he could frequently stoop, kneel, balance, crouch and occasionally climb and crawl; his ability to reach, to handle, to feel and to push/pull was limited; and he was restricted from working around vibration. (R. at 1011-13.) Dr. Duggal based his findings on Bolling's right thumb amputation. (R. at 1011-13.) He opined Bolling would be absent from work more than two days a month. (R. at 1013.)

On March 28, 2022, O'Quinn completed a mental assessment, finding Bolling had no limitations on his ability to maintain personal appearance and to behave in an emotionally stable manner. (R. at 1008-10.) He opined Bolling had mild limitations in his ability to follow work rules; to relate to co-workers; to use judgment in public; to interact with supervisors; to understand, remember and carry out simple job instructions; and to demonstrate reliability. (R. at 1008-10.) O'Quinn found Bolling had marked limitations, resulting in an unsatisfactory work performance, in his ability to deal with the public; to deal with work stresses; to function independently; to maintain attention and concentration; to understand, remember and carry out detailed and complex job instructions; and to relate predictably in social situations. (R. at 1008-09.) He found Bolling would be absent from work more than two days a month. (R. at 1010.) O'Quinn based his findings

on Bolling's thumb amputation; increased anxiety; decreased thought organization; his avoidance of the public; and social and family functioning issues. (R. at 1008-10.)

### *III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2022). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4) (2022).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings.

This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Bolling argues the ALJ erred by improperly determining his residual functional capacity by rejecting the opinions of Dr. Deel, Dr. Duggal and O'Quinn. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-6.) Based on my review of the record, it appears that the ALJ's finding at the second step of the process is not supported by substantial evidence of record and is contrary to the ALJ's finding as to Bolling's residual functional capacity. The ALJ found that the medical evidence established that Bolling had only the following severe impairments: right thumb amputation; obesity; hypertension; depression; and anxiety. (R. at 15.) The ALJ specifically found that Bolling's pneumoconiosis was non-severe.[13] (R. at 15.) Despite finding that Bolling did not suffer from a severe respiratory impairment, the ALJ found that he could have only occasional exposure to pulmonary irritants. (R. at 18.)

The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1522(a) (2021).

---

[13] The ALJ also found that Bolling had been diagnosed with chronic obstructive pulmonary disease, ("COPD"), which he found was non-severe, (R. at 15), but my review of the medical evidence does not reveal a diagnosis of COPD.

Although the Social Security regulations do not define the term "significant," this court previously has held that it must give the word its commonly accepted meanings, among which are, "having a meaning and deserving to be considered." *Townsend v. Heckler*, 581 F. Supp. 157, 159 (W.D. Va. 1983). In *Townsend*, the court also noted that the antonym of "significant" is "meaningless." 581 F. Supp. at 159. Since the ALJ found that Bolling could have only occasional exposure to pulmonary irritants, he necessarily found that Bolling's pulmonary impairment was not meaningless.

Based on the above, I cannot find that substantial evidence exists to support the ALJ's finding that Bolling did not suffer from a severe pulmonary impairment.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist to support the ALJ's finding that Bolling did not suffer from a severe pulmonary impairment; and

2. Substantial evidence does not exist in the record to support the Commissioner's finding that Bolling was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Bolling's and the Commissioner's motions for summary judgment; vacate the Commissioner's

decision denying benefits and remand Bolling's claim to the Commissioner for further consideration.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. §636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:   January 24, 2024.

*s/ Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE